IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRANDON MICHAEL KRAUTZ,      )<br>                              )<br>        Plaintiff,            )<br>                              )<br>        v.                    )   Civil Action No. 22-535<br>                              )<br>KILOLO KIJAKAZI,              )<br>                              )<br>        Defendant.            )  | |

**O R D E R**

AND NOW, this 15th day of August, 2023, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 12) filed in the above-captioned matter on August 22, 2022,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 10) filed in the above-captioned matter on July 11, 2022,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.     Background**

Plaintiff Brandon Michael Krautz protectively filed a claim for Supplemental Security Income benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381 *et seq.*, effective April 14, 2020, claiming that he became disabled on January 1, 2015, due to epilepsy. (R. 15, 185-91, 212). After being denied initially on June 25, 2020, and upon reconsideration on

November 30, 2020, Plaintiff sought, and obtained, a telephonic hearing before an Administrative Law Judge ("ALJ") on April 12, 2021.  (R. 15, 95-99, 110-13, 114, 33-62).  In a decision dated July 29, 2021, the ALJ denied Plaintiff's request for benefits.  (R. 15-27).  The Appeals Council declined to review the ALJ's decision on March 14, 2022.  (R. 1-3).  Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II.     **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record, and the scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.  *See* 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting § 405(g)); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence).  If the district court finds this to be so, it must uphold the Commissioner's final decision.  *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  The Court may not set aside a decision that is supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing § 405(g)); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

"Substantial evidence" is defined as "more than a mere scintilla." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)).  It

means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  "'Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.'" *Id.*  So as to facilitate the district court's review, an ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Decisions that are conclusory in their findings or indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence. *See id.* at 705-06.  Moreover, the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period.  *See Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001).  "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process in guiding ALJs in determining whether a claimant is under a

disability as defined by the Act. *See* 20 C.F.R. § 416.920. At Step One, the ALJ must determine whether the claimant is currently engaging in substantial gainful activity. *See id.* at § 416.920(a)(4)(i). If so, the disability claim will be denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. *See* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* at § 416.922. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the ALJ must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. *See id.* at § 416.920(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

In considering these steps, the ALJ must formulate the claimant's residual functional capacity ("RFC"). A claimant's RFC is defined as the most that an individual is still able to do despite the limitations caused by his or her impairments. *See Fargnoli*, 247 F.3d at 40; 20 C.F.R. § 416.945(a). At Step Four, it is the claimant's burden of demonstrating an inability to perform his or her past relevant work. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). If the ALJ determines that the claimant lacks the RFC to resume his or her former occupation, the evaluation then moves to the fifth and final step. *See* 20 C.F.R. § 416.920(a)(4)(iv).

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. *See id.* at § 416.920(a)(4)(v). In making this determination, the

ALJ must consider the claimant's RFC, age, education, and past work experience. *See id.* The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See id.* at § 416.923.

### III.    The ALJ's Decision

In her July 29, 2021 decision, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the application date of April 14, 2020. (R. 17). The ALJ also found that Plaintiff met the second requirement of the process insofar as he had the severe impairments of epilepsy and anxiety. (*Id.*). The ALJ concluded that neither Plaintiff's epilepsy nor his anxiety met any of the listings that would satisfy Step Three. (R. 17-19). In so finding, she specifically noted that Plaintiff's impairments "do not meet or medically equal listing 11.02" for epilepsy but stated in her explanation that "[t]he record does show dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." (R. 18).

The ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels with a number of non-exertional limitations. (R. 19). At Step Four of the process, the ALJ used a vocational expert ("VE") to find that Plaintiff was unable to perform any of his past relevant work. She proceeded to determine, at Step Five, whether there were jobs in the national economy that Plaintiff could perform. (R. 26-27). The VE testified that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform a significant number of jobs in the national economy, including the representative occupations of order caller, sorter, and order clerk. (R. 27, 59-61). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 27).

**IV.     Legal Analysis**

The issue before the Court in this case is straight-forward. The parties agree that the ALJ found that Plaintiff did not meeting Listing 11.02 at Step Three of the sequential analysis. They do not dispute, and the record is clear, that in making this finding, the ALJ stated: "The record does show dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." (R. 18). All parties (and the Court) appear to agree that, if taken at face value, that statement would seem to indicate that the requirements of Subpart B of Listing 11.02 have been met. Where the parties differ is as to whether the ALJ's statement should be taken at face value or treated as a scrivener's error. Because the Court finds that the record, as a whole, does not allow the Court to clearly identify the ALJ's statement as a typographical error, it will remand for further consideration and clarification of this issue.

As discussed above, if a claimant is found to have met or medically equaled a listing at Step Three, a finding of disability is automatically directed. At issue here is Listing 11.02, which provides:

> **11.02 Epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:**
>
> A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C).
>
> OR
>
> B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C).
>
> OR
>
> C. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once every 2 months for at least 4 consecutive months (see 11.00H4) despite

      adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:

          1. Physical functioning (see 11.00G3a); or
          2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
          3. Interacting with others (see 11.00G3b(ii)); or
          4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
          5. Adapting or managing oneself (see 11.00G3b(iv)).

OR

D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:

          1. Physical functioning (see 11.00G3a); or
          2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
          3. Interacting with others (see 11.00G3b(ii)); or
          4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
          5. Adapting or managing oneself (see 11.00G3b(iv)).

The four criteria for meeting the listing are set forth disjunctively, so a claimant whose conditions satisfy Subsection A, B, C, *or* D will be found to meet Listing 11.02. The ALJ's statement about dyscognitive seizures in her Step Three analysis directly and affirmatively tracks the language of Subsection B of the listing. Since, again, meeting any of the four subparts allows a claimant to meet Listing 11.02, this would appear to indicate that Plaintiff ***does*** meet the listing. However, as the Commissioner points out, the ALJ quite clearly found that Plaintiff did not meet the listing and continued to Steps Four and Five, which would not have been warranted had Plaintiff met a listing at Step Three.

     This creates, on its face, a clear legal inconsistency. If Plaintiff indeed suffered from dyscognitive seizures at the frequency found by the ALJ, despite adherence to prescribed treatment, the ALJ was wrong in finding that he did not meet the listing. This would constitute an error of law. The Commissioner suggests that the explanation for this

inconsistency is that the decision contains a scrivener's error: specifically, the ALJ inadvertently omitted the word "not," and meant to state that "[t]he record does [***not***] show dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment." She argues that the decision, read as a whole, confirms that the problem here was a mere typographical error, particularly in light of the ALJ's conclusions at Steps Three, Four, and Five. While the Commissioner's explanation ultimately may be right, the Court finds that assuming such a scrivener's error is not warranted on the record in this case.

It would, of course, be obtuse to dismiss the very real possibility of a typographical error in the ALJ's Step Three findings. However, such an error here would be a big one, since, as discussed above, it creates a material legal inconsistency. In any event, the Court disagrees with the Commissioner that the decision as a whole clearly demonstrates this error. The frequency of Plaintiff's dyscognitive seizures was discussed a great length by the ALJ in her decision. Although she found Plaintiff's testimony as to frequency of his seizures to be inconsistent with the record (R. 21-23), she also found the opinion of James Catalano, M.D., to be partially persuasive. In said opinion, Dr. Catalano reported that Plaintiff had dyscognitive seizures once a week (R. 414), and, in evaluating this opinion, the ALJ specifically stated that "Dr. Catalano's report regarding the type and frequency of seizures are [sic] consistent with the epilepsy clinic treatment records." (R. 24). This, of course, could be construed as consistent with the statement at issue in the Step Three analysis, undercutting the argument that the statement was a mere scrivener's error rather than a misapplication of law.

The Commissioner also suggests that the ALJ did not intend to find that Plaintiff properly adhered to prescribed treatment in any event. The Court notes that the ALJ did mention Plaintiff's refusal to participate in epilepsy monitoring unit testing (R. 21-23) but did not

specifically find that this refusal constituted failure to adhere to prescribed medical treatment. The record does not contain any statement from a medical professional that Plaintiff's adherence to prescribed treatment was unacceptable. Likewise, although the ALJ mentioned that inadequate dosages of Gabapentin likely led to any increase in seizure (R. 21-23), she, again, did not find that Plaintiff failed to take any of his medication as prescribed.

The bottom line is that the Court may well be dealing with a mere typographical error. However, the error is significant, since it creates a major legal error. "While courts should not nitpick ALJ decisions 'in quest of a perfect opinion,' we cannot rewrite the record as though the ALJ's central factual finding was a typo." *Poole v. Kijakazi*, 28 F.4th 792, 797 (7th Cir. 2022) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)). *See also Marcos C. v. Kijakazi*, No. 17 C 9262, 2022 WL 4551894, at *9 (N.D. Ill. Sept. 29, 2022). Perhaps if the record conclusively showed that the ALJ's statement in the Step Three analysis was a simple misstatement, remand would not be necessary. However, some of the ALJ's other findings make it hard to find that a typographical error is the only explanation here. Ultimately, the Court will leave it to the Commissioner to clarify the record on this issue, rather than attempt to divine the ALJ's intention itself.[1] It will therefore remand the case for further discussion.[2] *See Mims v. Berryhill*, No. CV 18-9286-BRM, 2019 WL 1326892, at *3 (D.N.J. Mar. 25, 2019) ("If it is not apparent/clear that the error was a typographical error, then we must remand the matter back to

---

[1]  It is not the role of a reviewing court to look at the evidence and determine whether it would lead to the conclusions to which the ALJ came. *See Fargnoli,* 247 F.3d at 44 n.7 ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.") (quoting *SEC v. Chenery Corporation,* 318 U.S. 80, 87 (1943))

[2]  Because it is the need for additional explanation by the ALJ that necessitates a remand in this case, the record does not permit the Court to reverse and remand the case for an award of benefits. *See Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Indeed, the Court emphasizes that it is not in any way finding that the ALJ's findings are incapable of being found to have adequate record support.

the Commissioner for further proceedings." (quoting *Kriebel v. Astrue*, No. 10-152E, 2012 WL 1032467, at *10 (W.D. Pa. Mar. 27, 2012))).

## V.     Conclusion

In short, the record does not permit the Court to determine whether the ALJ employed proper legal standards in making her Step Three findings, and, accordingly, the Court hereby remands the case to the Commissioner for reconsideration consistent with this Order.

s/Alan N. Bloch<br>
United States District Judge

ecf:        Counsel of record